## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RACHEL THERON et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-23-1176-G** |
| | ) | |
| **CANADIAN COUNTY** *ex rel.* | ) | |
| **BOARD OF COUNTY** | ) | |
| **COMMISSIONERS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

Plaintiffs Rachel Theron and Misty Schweitzer bring employment claims against four defendants: Canadian County *ex rel.* Board of County Commissioners ("the Board"), Judge Bobby Hughey, Melanie Johnson, and Cedric Mills. *See* Second Am. Compl. (Doc. No. 1-7). Now before the Court is a Motion to Dismiss (Doc. No. 7) filed by Defendants Johnson and Mills, as well as a Response (Doc. No. 20) and a Reply (Doc. No. 26).

I.      *Summary of the Pleadings*

Plaintiffs allege as follows:

At all relevant times, Plaintiffs were employed by Canadian County, Oklahoma ("the County") and worked at the Gary E. Miller Canadian County Children's Justice Center ("CCCJC"). Second Am. Compl. ¶ 3. Plaintiff Theron was hired as an Accounting Specialist at the CCCJC and began working there in October of 2021. *Id.* ¶ 52. The CCCJC terminated Plaintiff Theron's employment in March of 2022. *Id.* ¶ 118. Plaintiff Schweitzer was employed at the CCCJC as a Human Resource Manager beginning or about

October 12, 2020.  *Id.* ¶ 120.  Plaintiff Schweitzer was terminated from her position on March 25, 2022.  *Id.* ¶ 133.

The CCCJC is a department under the fiscal umbrella of the County that provides services and programs for children and families.  *Id.* ¶¶ 4, 30.  Program and statutory authority for the CCCJC falls under the purview of Defendant Canadian County Associate District Judge Bobby Hughey, who acts in a dual capacity: as an employee of the State of Oklahoma in a judicial and administrative capacity and as an actor of the County when acting in an administrative capacity for the CCCJC.  *Id.* ¶¶ 5, 32.

The Board, comprising three County Commissioners, is the administrative body for the County and is responsible for the management and decisionmaking related to County facilities and employees.  *Id.* ¶¶ 18-24.  The Board has legal powers when acting in the County's welfare and the official duty to ensure the fiscal responsibility of county officers and employees who handle county funds.  *Id.* ¶¶ 25-28.

Defendant Johnson is the current Director at the CCCJC; she was hired and appointed by Defendant Judge Hughey and approved by the County Commissioners.  *Id.* ¶¶ 38, 200.  The Director is responsible for appointing and removing other employees at the facility.  *Id.* ¶¶ 34, 37.  Defendant Mills is the Assistant Director.  *Id.* ¶ 38.  He was approved by Defendant Johnson and the County Commissioners and is supervised by Defendant Johnson.  *Id.* ¶ 200.

II.    *Applicable Standards*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint

and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.    *The Motion to Dismiss*

Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 against Defendants Johnson and Mills (hereinafter "Defendants"), in both their official and individual capacities. *See* Second Am. Compl. ¶¶ 193-230. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that they were

acting under color of state law in connection with Plaintiffs' assertions of unlawful treatment at CCCJC. Defendants argue, however, that Plaintiffs cannot show that Defendants "subject[ed]" Plaintiffs, "or cause[d] [Plaintiffs] to be subjected," "to a deprivation of [their] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

### A. *Plaintiffs' Official-Capacity Claims*

Defendants argue that Plaintiffs' claims against them in their official capacities as County employees should be dismissed as duplicative of the same claims raised against the Board. *See* Defs.' Mot. to Dismiss at 19-20; Defs.' Reply at 2. Plaintiffs offer no substantive response to this assertion.

It is well-established that "an official-capacity suit is . . . to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Further, "[a] suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county." *Snow v. Bd. of Cnty. Comm'rs of Cnty. of McClain*, No. 14-911-HE, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) (citing Okla. Stat. tit. 19, § 4). And "in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county." *Id.* (citing *Porro*, 624 F.3d at 1328).

It follows that, Plaintiffs having offered no distinguishing facts or authority, the official-capacity claims should be dismissed as redundant and duplicative. *See id.*; *Carskadon v. Armor Corr. Health Servs., Inc.*, No. CIV-18-1013-G, 2020 WL 2813526, at *4 (W.D. Okla. May 29, 2020).

### B. Plaintiffs' Individual-Capacity Claims

Although the pleading cites various constitutional deprivations, Plaintiffs' briefing specifies that they are claiming Defendants' treatment of them after they spoke out on matters of public concern violated their First Amendment rights. *See* Pls.' Resp. at 12-14.

Defendants argue that they are entitled to qualified immunity on Plaintiffs' First Amendment claims. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

The First Amendment "forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 891-92 (2018). A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).[1]

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom

---

[1] Although Defendants cite standards relevant to considering First Amendment claims in a non-employment context, the allegations of the Second Amended Complaint most reasonably reflect that Defendants held supervisory positions at the CCCJC over Plaintiffs as employees. *See, e.g.*, Second Am. Compl. ¶¶ 34, 36-38, 66-69, 71, 74, 201-202. When a § 1983 claim is premised upon supervisor liability, the facts must demonstrate an "'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (internal quotation marks omitted). Generally, the plaintiff must allege facts establishing: (1) the supervisory defendant's personal involvement in the asserted violation of federal rights; (2) a sufficient causal connection; and (3) a culpable state of mind. *Id.* at 767-69; *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

of speech retaliation claims is a five step inquiry" that will be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)).  The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted).  "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

Defendants argue that Plaintiffs have failed to plausibly allege that their speech involved a matter of public concern, as required to be entitled to First Amendment protection.  To adequately plead this element, Plaintiffs must allege that their speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.  The inquiry turns on the "content, form, and context" of the speech.

*Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Connick*, 461 U.S. at 147).  Courts also consider the motive of the speaker: "[w]as the speech calculated to redress personal grievances or did it have some broader public purpose?" *Eisenhour*, 744 F.3d at 1228.

Plaintiffs allege that they spoke out, as least at times, "as individuals" rather than as employees regarding multiple problems at the CCCJC, including "financial mismanagement, violations of spending and budgeting laws, diversion of funds and the wrongful termination of employees who complained," prior to being terminated. Second Am. Compl. ¶¶ 51, 213; *see also id.* ¶¶ 199, 207-209, 212, 214-215. Construed in Plaintiffs' favor, these allegations plausibly reflect that Plaintiffs' speech related to a concern to the community and/or "a subject of legitimate news interest," involving more than a personal grievance or "solely . . . their working conditions." *Lane*, 573 U.S. at 241 (internal quotation marks omitted); Defs.' Reply at 6. Plaintiffs therefore have adequately pleaded that their protected speech involved a matter of public concern for purposes of the *Garcetti/Pickering* analysis.

The Court concludes that "the facts that [Plaintiffs] ha[ve] alleged" are sufficient to "make out a violation of a constitutional right." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted). Further, from the authorities cited above it is clear that this First Amendment right was clearly established at the relevant time period of 2020 to 2022. *See supra*; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005) ("[The defendant] violated clearly established law, and thus is not entitled to qualified immunity, if he terminated [the plaintiff] for exercising her free speech rights."). Dismissal of these claims is not warranted on this basis.[2]

---

[2] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judg[]ment should [Plaintiffs'] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996).

CONCLUSION

For all these reasons, the Motion to Dismiss (Doc. No. 7) is GRANTED IN PART and DENIED IN PART.

Plaintiffs' claims against Defendant Johnson and Defendant Mills in their official capacities are DISMISSED without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' claims against Defendant Johnson and Defendant Mills in their individual capacities remain pending.

IT IS SO ORDERED this 26th day of September, 2024.

_Charles B. Goodwin_
CHARLES B. GOODWIN
United States District Judge