## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RACHEL THERON et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-23-1176-G** |
| | ) |
| **CANADIAN COUNTY** *ex rel.* | ) |
| **BOARD OF COUNTY** | ) |
| **COMMISSIONERS et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Plaintiffs Rachel Theron and Misty Schweitzer bring employment claims against four defendants: Canadian County *ex rel.* Board of County Commissioners ("the Board"), Judge Bobby Hughey, Melanie Johnson, and Cedric Mills. *See* Second Am. Compl. (Doc. No. 1-7). Now before the Court is a Motion to Dismiss (Doc. No. 8) filed by the Board. Plaintiffs have responded (Doc. Nos. 21, 22), and the Board has filed Replies (Doc. Nos. 24, 25).

### I.  *Summary of the Pleadings*

Plaintiffs initially filed this lawsuit in state court on December 12, 2022. *See* Pet. (Doc. No. 1-3). Defendants removed the case to this Court on December 22, 2023.

Plaintiffs allege as follows:

At all relevant times, Plaintiffs were employed by Canadian County, Oklahoma ("the County") and worked at the Gary E. Miller Canadian County Children's Justice Center ("CCCJC"). Second Am. Compl. ¶ 3. The CCCJC is a department under the fiscal

umbrella of the County that provides services and programs for children and families. *Id.* ¶¶ 4, 30. Program and statutory authority for the CCCJC falls under the purview of Defendant Canadian County Associate District Judge Bobby Hughey, who acts in a dual capacity: as an employee of the State of Oklahoma in a judicial and administrative capacity and as an actor of the County when acting in an administrative capacity for the CCCJC. *Id.* ¶¶ 5, 32.

Plaintiff Theron was hired as an Accounting Specialist at the CCCJC and began working there in October of 2021. *Id.* ¶ 52. The CCCJC terminated Plaintiff Theron's employment in March of 2022. *Id.* ¶ 118. Plaintiff Schweitzer was employed at the CCCJC as a Human Resource Manager beginning or about October 12, 2020. *Id.* ¶ 120. Plaintiff Schweitzer was terminated from her position on March 25, 2022. *Id.* ¶ 133.

The Board, comprising three County Commissioners, is the administrative body for the County and is responsible for the management and decisionmaking related to County facilities and employees. *Id.* ¶¶ 18-24. The Board has legal powers when acting in the County's welfare and the official duty to ensure the fiscal responsibility of county officers and employees who handle county funds. *Id.* ¶¶ 25-28.

Plaintiffs' additional allegations will be addressed further herein in connection with the Board's specific arguments for dismissal.

## II.    *Applicable Standards*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec.*

*Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Board also cites Federal Rule of Civil Procedure 12(b)(1), arguing that certain claims must be dismissed due to a lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). Here, the Board makes a facial attack on the sufficiency of the allegations of the Second Amended Complaint. In reviewing a facial attack, a district court confines its analysis to the pleadings and must accept the claimant's allegations as true. *Id.*; *see also United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 898-99 (10th Cir. 2016). As the party asserting federal jurisdiction, Plaintiffs

bear "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

### III.    The Board's Motion to Dismiss

#### A.  Plaintiff Theron's Claim for Age Discrimination

Plaintiff Theron alleges that the Board is liable for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.  Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Generally, to establish a prima facie case of age discrimination, a plaintiff must prove that "1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class."  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (2010) (alteration and internal quotation marks omitted); *see also Hare v. Denver Merch. Mart, Inc.*, 255 F. App'x 298, 301-02 (10th Cir. 2007).

The Board does not dispute that Plaintiff Theron has adequately pleaded the first, second, and fourth elements of the prima facie case.  *See* Second Am. Compl. ¶¶ 3, 52-119, 134-136, 139-140; *see* Def.'s Mot. to Dismiss at 10.  The Board nominally challenges Plaintiff Theron's pleading of the third element—i.e., whether "she was qualified for her former position."  *Jones*, 617 F.3d at 1278; *see* Def.'s Mot. to Dismiss at 10.  The Tenth Circuit has "long held" that a plaintiff may establish such qualification "by credible

evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, . . . or by evidence that she had held her position for a significant period of time." *Mattera v. Gambro, Inc.*, 94 F. App'x 725, 728 (10th Cir. 2004) (internal quotation marks omitted).

Plaintiff Theron has alleged that she holds both a bachelor's degree and a master's degree in business administration, that she "was qualified based on education and experience," and that she was replaced by a less-qualified employee. Second Am. Compl. ¶¶ 56, 97, 119. Plaintiff Theron therefore has pleaded sufficient facts from which it can be plausibly inferred that she was qualified for her role as Accounting Specialist.

ADEA claims additionally require that a plaintiff prove, by either direct or circumstantial evidence, that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). The Tenth Circuit has clarified that the "[but-for] causal standard does not require plaintiffs to show that age was the sole motivating factor in the employment decision." *Jones*, 617 F.3d at 1277 (alterations and internal quotation marks omitted). Rather, "an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Id.* (internal quotation marks omitted).

The Board argues that Plaintiff Theron has not adequately alleged that her age was the but-for cause of her termination and related mistreatment. *See* Def.'s Mot. to Dismiss at 10-11. But Plaintiff Theron has alleged: "Upon information and belief, Johnson, Brothers, and other CCCJC management worked to remove Theron from her position due to her age, stating that the way that she handled accounting matters was 'old school.'"

Second Am. Compl. ¶ 67.  And Plaintiff Theron was replaced by a younger employee.  *Id.* ¶¶ 57, 119.  At this early pleading stage, the Court concludes that Plaintiff Theron has alleged facts that support plausible "but-for" causation, connecting the alleged discriminatory belief to an adverse employment action.  *See Jones*, 617 F.3d at 1277-78.

Plaintiff Theron also seeks relief for age discrimination under the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101 et seq.  Like the ADEA, the OADA prohibits employer discrimination based on age.  *See id.* § 1302.  The OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of . . . age." *Id.* § 1101(A).

The analysis for an age-discrimination claim under the state statute is similar to that applied to the federal claim, and "[t]he success of [Plaintiff Theron's] age discrimination claim under the OADA is contingent on the success of her ADEA claim."  *Branum v. Orscheln Farm & Home, LLC*, No. CIV-18-281, 2020 WL 1917334, at *4 (E.D. Okla. Apr. 20, 2020).  It follows that the Board has not shown that Plaintiff Theron's OADA claim is subject to dismissal pursuant to Rule 12(b)(6).  *See id.*; *Taber v. City of Sand Springs*, No. 12-CV-0666, 2014 WL 241697, at *7 (N.D. Okla. Jan. 22, 2014).[1]

---

[1] To the extent the pleading suggests that Plaintiff Theron is attempting to bring, in addition to her disparate-treatment claim, a claim for hostile work environment under the ADEA, the Court agrees with the Board that no such claim is plausibly implicated by the allegations of the Second Amended Complaint.

### B.  Plaintiff Schweitzer's Claim for Disability Discrimination

Plaintiff Schweitzer alleges that she was subjected to discrimination on the basis of her disability in violation of the American with Disabilities Act ("ADA"),[2] the Rehabilitation Act,[3] and the OADA.  *See* Second Am. Compl. ¶¶ 143-156.

The ADA and the Rehabilitation Act are "closely linked," as the latter "expressly incorporates and adopts the employment discrimination standards contained in Title I of the [ADA]."  *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015); *Detterline v. Salazar*, 320 F. App'x 853, 856 (10th Cir. 2009).  "Thus, decisions under both Acts apply interchangeably to" the Court's analysis, and, to the extent feasible, the Court "look[s] to decisions construing the Rehabilitation Act to assist . . . in interpreting analogous provisions of the ADA."  *Detterline*, 320 F. App'x at 856 (internal quotation marks omitted); *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotation marks omitted).

To establish a prima facie case of employment discrimination under the Rehabilitation Act, Plaintiff Schweitzer must show the following:

> 1) that [she] is disabled under the Act; (2) that [she] would be "otherwise qualified" to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against [her].

---

[2] Title I of the ADA prohibits discrimination "on the basis of disability" against qualified individuals by employers and their agents.  42 U.S.C. § 12112(a); *see id.* §§ 12111-12117.

[3] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination by reason of disability "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

*McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).

To establish a prima facie case under the ADA, Plaintiff Schweitzer must similarly show:

> (1) that [she] is disabled within the meaning of the ADA; (2) that [she] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that [she] was discriminated against because of [her] disability.

*Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218-19 (10th Cir. 2016).

The ADA and the Rehabilitation Act define "disability" in "essentially the same terms." *Nielson v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998). And because the Rehabilitation Act incorporates the ADA's standards, *see* 29 U.S.C. § 705(9)(B), the result is an expanded understanding of "disabled" under both statutes:

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment."

*McGeshick*, 357 F.3d at 1150 (quoting 42 U.S.C. § 12102(1)).  To satisfy subsection (A), "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted).

The Board first asserts that Plaintiff Schweitzer fails to establish that she is "disabled" within the meaning of the federal statutes because she has not pleaded that she is substantially limited in a major life activity. *See* Def.'s Mot. to Dismiss at 14.  The Court

disagrees.  In the Second Amended Complaint, Plaintiff Schweitzer identifies multiple diagnosed medical conditions that "limit[]" and "impact . . . working and . . . the circulatory system."  Second Am. Compl. ¶¶ 123, 148-149.  "Major life activities include such functions as . . . working" and "[t]he operation of a major bodily function, including . . . circulatory . . . functions."  *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000); 29 C.F.R. § 1630.2(i)(1)(ii).  Further, the term "substantially limits" must be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).

Next, the Board argues that there is no adequate allegation that Plaintiff Schweitzer was terminated "because of" her disability.  *See Kilcrease*, 828 F.3d at 1219; 29 U.S.C. § 794(a).  Plaintiff Schweitzer alleges, however, that on March 24, 2022, she "took off work to attend a scheduled doctor's appointment," as well as her child's sporting event, and that at that doctor's appointment Plaintiff Schweitzer "was to obtain further orders and information related to her request for accommodations."  Second Am. Compl. ¶¶ 130, 132.  According to the pleading, Plaintiff Schweitzer's employers knew this was the purpose of the doctor's appointment and, upon returning to work the next day, Plaintiff Schweitzer was terminated without cause or explanation.  *See id.* ¶¶ 131, 133.

This one-day temporal proximity "contributes to an inference that [Plaintiff Schweitzer was terminated] because of [her] disability."  *Butler v. City of Prairie Vill.*, 172 F.3d 736, 749 (10th Cir. 1999); *see Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008) ("The closer in time a protected action . . . is followed by an adverse action . . . , the more likely temporal proximity will support an inference of discrimination.").  At this early

pleading stage, Plaintiff Schweitzer has sufficiently alleged a claim of disability discrimination under the ADA and the Rehabilitation Act.

Like these federal statutes, the OADA prohibits employment discrimination on the basis of disability, *see* Okla. Stat. tit. 25, § 1302. The OADA's protections "are co-extensive with the protections provided by federal law," and "the Court applies the same analysis to [the] claims." *Mitchell v. Clean Harbors Env't Servs., Inc.*, No. CIV-21-829-SLP, 2023 WL 1768140, at *4 (W.D. Okla. Feb. 3, 2023) (internal quotation marks omitted). It has not been shown that Plaintiff Schweitzer's state-law claim is subject to dismissal under Rule 12(b)(6).

### C. Plaintiffs' ADEA and OADA Retaliation Claims

#### 1. The ADEA Retaliation Claim

The ADEA prohibits an employer from discriminating against an employee because she "has opposed any practice made an unlawful employment practice by [the ADEA]" or participated in any investigation or proceeding under the ADEA. 29 U.S.C. § 623(d). Plaintiffs assert that they faced unlawful retaliation due to the exercise of rights under the ADEA with the Equal Employment Opportunity Commission ("EEOC"). Specifically, Plaintiff Theron alleges that she was terminated for filing a discrimination charge with the EEOC, and Plaintiff Schweitzer alleges that she was terminated for acting as a witness to Plaintiff Theron's EEOC complaint. *See* Second Am. Compl. ¶¶ 157-165.

To establish this claim, each plaintiff must first prove her prima facie case:

(1) . . . she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action

materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008).

The Board challenges Plaintiffs' ability to show a causal connection between their participation in the EEOC proceedings and their terminations. But, similarly to the point referenced above, "protected conduct closely followed by adverse action" can be "evidence of circumstances that justify an inference of retaliatory motive." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (internal quotation marks omitted); *see Trujillo*, 524 F.3d at 1157. According to the Second Amended Complaint, Plaintiff Theron received harassment and removal from job duties in response to submitting a complaint to the County and was terminated only "a few weeks after" the CCCJC received notice of Plaintiff Theron's EEOC charge, for which Plaintiff Schweitzer acted as a witness. *See* Second Am. Compl. ¶¶ 82-84, 89-90, 108-118, 128-129, 158-163. At the motion to dismiss stage, such close temporal proximity—considered together with the additional pleading allegations—allows a plausible inference of a causal connection between Plaintiffs' protected activity and their terminations from the CCCJC. *See O'Neal*, 237 F.3d at 1253; *Guy v. Wilkie*, No. CIV-18-33-SLP, 2019 WL 11639502, at *3-4 (W.D. Okla. May 6, 2019); *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Plaintiffs have adequately pleaded their federal retaliation claim.

### 2. *The OADA Retaliation Claim*

Plaintiffs cite the OADA in connection with their ADEA retaliation claim, *see* Second Am. Compl. at 22. As conceded in Plaintiffs' briefing, however, the Oklahoma Supreme Court has held that "[t]he OADA does not 'provide any remedy to compensate an employee who suffers retaliation at the hands of an employer.'" *Davis v. Mercy Rehab. Hosp.*, No. CIV-19-561-D, 2019 WL 13113533, at *4 (W.D. Okla. Nov. 20, 2019) (quoting *Edwards v. Andrews*, 382 P.3d 1045, 1047 (Okla. 2016)); *accord Sultuska v. JP Morgan Chase Bank*, No. CIV-18-669-C, 2019 WL 4888579, at *2 n.2 (W.D. Okla. Oct. 3, 2019); *Mills v. Amazon.com Servs., LLC*, No. 24-CV-0188, 2024 WL 3205397, at *3 & n.2 (N.D. Okla. June 27, 2024). *But cf. McDaniel v. Legend Energy Servs., LLC*, No. CIV-20-1278-R, 2021 WL 535862, at *1-2 (W.D. Okla. Feb. 12, 2021) (suggesting that the question of whether such a remedy is available should be certified to the Oklahoma Supreme Court).

In light of the express language of *Edwards* and the holdings cited above, the Court concludes that the OADA retaliation claim is not cognizable and shall be dismissed. *See Sultuska*, 2019 WL 4888579, at *2 n.2.

### D. *Plaintiffs' <u>Burk</u> Tort Claim*

Plaintiffs also claim that the Board is liable for retaliatory termination under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). *See* Second Am. Compl. ¶¶ 174-192. In *Burk,* the Oklahoma Supreme Court recognized a tort cause of action in favor of an at-will employee who is terminated "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 770 P.2d at 29.

### 1. *Plaintiff Theron: Rule 12(b)(1)*

The Board first argues that Plaintiff Theron's *Burk* claim is barred for failure to comply with the notice requirements of the Oklahoma Governmental Tort Claims Act ("OGCTA"), Okla. Stat. tit. 51, §§ 151 et seq. The OGTCA provides "the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort" under Oklahoma law. *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009).

Pursuant to the OGTCA, any person with a claim against a government entity must present that entity with notice in the form of a written claim for relief. *See* Okla. Stat. tit. 51, § 156. Further,

> [a] person may not initiate suit against [that entity] unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period.

*Id.* § 157(A). No claim "arising under [the OGTCA] shall be maintained unless valid notice has been given." *Id.* § 157(B).

Plaintiff Theron served her notice of tort claim upon the Board on September 27, 2022. Second Am. Compl. ¶ 13. The Board therefore had until December 26, 2022, to consider and act upon Plaintiff Theron's claim. *See* Def.'s Mot. to Dismiss at 20 (citing Okla. Stat. tit. 51, § 157(A)). Plaintiff Theron's lawsuit—including this claim—was filed on December 12, 2022, however, and so the Board argues that Plaintiff Theron's *Burk* claim is subject to dismissal as prematurely filed. *See id.* at 20-21; Pet. ¶¶ 119-125. Plaintiff Theron agrees that the claim was "not ripe" but asserts that, by later amending the

pleading in this case, she "correct[ed] any error made by a premature filing" and rendered the claim timely.  Pl. Theron's Resp. at 23-24.

Plaintiff Theron's position is squarely foreclosed by the Oklahoma Supreme Court's decision in *Hathaway v. State ex rel. Medical Research & Technical Authority*, 49 P.3d 740 (Okla. 2002).  In *Hathaway*, the state's highest court "held that when a lawsuit was filed before the expiration of the 90-day review period, the lawsuit was invalid" and "subject to dismissal." *Layton v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, No. CIV-09-1208-C, 2013 WL 5532175, at *2 (W.D. Okla. Oct. 4, 2013) (citing *Hathaway*, 49 P.3d at 743-44); *see also Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996) ("[C]ompliance with the written notice of claim and denial of claim provisions in §§ 156 and 157 are prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government.").  Accordingly, Plaintiff Theron's *Burk* claim shall be dismissed.  *See Layton*, 2013 WL 5532175, at *2; *see also Metcalf v. City of Grove*, No. 05-CV-120, 2006 WL 8457346, at *15-16 (N.D. Okla. Mar. 8, 2006) (recognizing dismissal was warranted on this basis but allowing for refiling).

### 2. *Plaintiff Schweitzer: Rule 12(b)(6)*

The Board seeks dismissal of Plaintiff Schweitzer's *Burk* retaliation claim on two bases.  First, it argues that because Plaintiff Schweitzer's federal retaliation claim fails, the corresponding state-law claim must fail.  *See* Def.'s Mot. to Dismiss at 22.  As held above, however, Plaintiffs' ADEA retaliation claim is not subject to dismissal at this juncture.  Further, Plaintiff Schweitzer's state-law claim plausibly alleges that her termination constituted unlawful retaliation not only for Plaintiff Schweitzer's participation in her

coworker's protected activity under the ADEA, but also for Plaintiff Schweitzer's own reporting of improper practices to decisionmakers.  *See* Second Am. Compl. ¶¶ 101-103, 127-129.

Second, the Board nominally argues that Plaintiff Schweitzer fails to identify any stated public policy of the State that supports her assertion of a tort claim for retaliation. *See* Def.'s Mot. to Dismiss at 18 n.5; *see also Reynolds v. Advance Alarms, Inc.*, 232 P.3d 907, 909 (Okla. 2009) (holding that a plaintiff must show that "the employment relationship was terminated contrary to an identified compelling Oklahoma public policy that is clearly articulated in constitutional, statutory, or decisional law" to maintain a cause of action under *Burk*).[4]  The Second Amended Complaint alleges:

> Oklahoma has a clearly articulated policy of prohibiting termination and retaliation against at-will employees in response to objecting to an employer's illegal, unethical, or fraudulent activities including reporting conduct which would violate the OADA, Public Health and Safety, the Oklahoma Whistleblower Act, the County Purchasing Act, Title 19 of the Oklahoma Statutes, the Oklahoma Constitution, and Oklahoma Administrative law as it relates to employment and the disclosure of fiscal irresponsibility, breach of the public trust, breach of fiduciary responsibilities, and other duties related to the management of public buildings and providing services to under[]privileged families and youth.

Second Am. Compl. ¶ 178.  The pleading also asserts:

> The Oklahoma Legislature has prohibited retaliation for assertion of rights under the OADA, for opposing discriminatory practice and for filing complaints pursuant to Oklahoma Statutes . . . . The OADA does set forth a

---

[4] The Board does not dispute that Plaintiff Schweitzer has adequately pleaded the remaining elements of a *Burk* claim: that "the plaintiff and defendant had a terminable-at-will employment relationship" and that "there is no other adequate remedy to protect the identified public policy."  *Reynolds*, 232 P.3d at 909; *see also Edwards*, 382 P.3d at 1047.

clearly articulated policy of prohibiting retaliation based on the reporting of discrimination.

*Id.* ¶¶ 180, 182 (citing Okla. Stat. tit. 25, § 1601; *Edwards*, 382 P.3d 1045).

The Board replies that these allegations are insufficiently specific, but the Court concludes that, taken as true and "read in the context of the entire complaint," Plaintiff Schweitzer's factual allegations set forth more than "labels and conclusions" and allow a reasonable inference that her termination was effected in a manner contrary to Oklahoma's clearly established public policy. *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020); *Khalik*, 671 F.3d at 1191; *see also Edwards*, 382 P.3d at 1047 ("[T]he Oklahoma Legislature has prohibited retaliation but has not supplied any monetary remedy for an employee."). Plaintiff Schweitzer therefore has a stated a claim upon which relief can be granted.

### E. Plaintiff Theron's Claim Under the Fair Labor Standards Act

Plaintiff Theron alleges that she was required to work at the CCCJC in excess of 40 hours per week but was not compensated for the overtime performed. *See* Second Am. Compl. ¶¶ 59-60, 166-172. She brings a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., seeking back wages on the unpaid work "at the rate of one and one-half times the regular rate of pay." *Id.* ¶ 173.

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To state a claim

for violation of the FLSA's overtime pay requirements, Plaintiff Theron must allege: (1) that the Board was an "employer" under the Act; (2) that Plaintiff Theron is an "employee" under the Act; (3) that the Board employed Plaintiff Theron's services; (4) that she was required to work more than 40 hours in a single work week; and (5) that she did not receive compensation at a rate of 1.5 times her normal hourly rate for the hours she worked over 40 in that week. *See Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2016 WL 7168235, at *2 (W.D. Okla. Dec. 8, 2016); *accord McDonald v. Gore Nitrogen Pumping Serv., LLC*, No. 18-1010-G, 2019 WL 611627, at *2 (W.D. Okla. Feb. 13, 2019); *see also Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1154-56 (D.N.M. 2020).

The Board does not challenge Plaintiff Theron's pleading of the above but, citing an unpublished Tenth Circuit decision, argues that "a plaintiff-employee must show . . . that the employer had actual or constructive knowledge of the overtime" and that this showing has not been made here. Def.'s Mot. to Dismiss at 17 (internal quotation marks omitted) (citing *McGrath v. Cent. Masonry Corp.*, 276 F. App'x 797 (10th Cir. 2008)); *see also* Def.'s Theron Reply at 4. The Board's cited authority was addressing the plaintiff's required burden at summary judgment, rather than on a motion to dismiss, however. *See McGrath*, 276 F. App'x at 799. Further, Plaintiff Theron has pleaded that "CCCJC Management knew or should have known that Plaintiff was working in excess of 40 hours per week and was not being compensated for the same." Second Am. Compl. ¶ 171.

This claim is not subject to dismissal pursuant to Rule 12(b)(6).

### F. Plaintiffs' 42 U.S.C. § 1983 Claims

Finally, both Plaintiffs bring "Monell Claims" against the Board pursuant to 42 U.S.C. § 1983. Second Am. Compl. ¶¶ 193-230. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Board does not dispute that they were acting under color of state law in connection with Plaintiffs' assertions of unlawful treatment at CCCJC. The Board argues, however, that Plaintiffs cannot show that the Board "subject[ed]" Plaintiffs, "or cause[d] [Plaintiffs] to be subjected," "to a deprivation of [their] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

Although the pleading cites various constitutional deprivations, Plaintiffs' briefing specifies that they are claiming the Board's treatment of them after they spoke out on matters of public concern violated their First Amendment rights. The First Amendment "forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 891-92 (2018). A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it

performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free-speech cases. *Leverington*, 643 F.3d at 724. The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted).

The Board argues that Plaintiffs have failed to plausibly allege that their speech involved a matter of public concern, as required to be entitled to First Amendment protection. To adequately plead this element, Plaintiffs must allege that their speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the "content, form, and context" of the speech.

*Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Connick*, 461 U.S. at 147). Courts also consider the motive of the speaker: "[w]as the speech calculated to redress personal grievances or did it have some broader public purpose?" *Eisenhour*, 744 F.3d at 1228.

Plaintiffs allege that they spoke out regarding multiple problems at the CCCJC, including "financial mismanagement, violations of spending and budgeting laws, diversion of funds and the wrongful termination of employees who complained." Second Am. Compl. ¶ 51; *see also id.* ¶¶ 199, 207-209, 212-215. Construed in Plaintiffs' favor, these allegations plausibly reflect that Plaintiffs' speech related to a concern to the community and/or "a subject of legitimate news interest," involving more than a personal grievance or routine office topics. *Lane*, 573 U.S. at 241 (internal quotation marks omitted). Plaintiffs therefore have adequately pleaded that their protected speech involved a matter of public concern for purposes of the *Garcetti/Pickering* analysis.

The Board also argues that Plaintiffs have not adequately alleged that liability for such a First Amendment violation could lie against it under 42 U.S.C. § 1983. To hold the Board liable under § 1983 for a deprivation of Plaintiffs' federally protected rights, Plaintiffs must: (1) identify "the existence of a [county] policy or custom by which [Plaintiffs] [were] denied a constitutional right"; and (2) demonstrate "that the policy or custom was the moving force behind the constitutional deprivation." *Burke v. Glanz*, 292 F. Supp. 3d 1235, 1249 (N.D. Okla. 2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)); *see also Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 732 F. App'x 624, 627-28 (10th

Cir. 2018).[5]  As to the first requirement, "[a] challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).  With respect to the second requirement,

> To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right. This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged."

*Id.* (citation and internal quotation marks omitted) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

The Board argues that Plaintiffs fail to plausibly plead the above requirements as to their First Amendment claim.  The Second Amended Complaint alleges the Board is a policymaker for the CCCJC and "responsible for the management and decision-making related to County facilities and employees."  Second Am. Compl. ¶¶ 18-19, 45, 200-203, 210-211.  Plaintiffs also allege that there is a longstanding pattern or practice of violating CCCJC employees' rights, shown not just in this case but in multiple other lawsuits, of violating the law with regard to budgeting, spending public funds and hiding misuse, and "pitting employees against one another," and that the Board "failed to act on their duty to investigate and manage the operations at the facility."  *See id.* ¶¶ 193-228.  Accepted as true, these allegations offer sufficient factual content to allow the Court "to draw the

---

[5] Under this liability standard, "a local governmental unit such as . . . a county . . . is a 'person' subject to § 1983 liability."  *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (internal quotation marks omitted).

reasonable inference that [the Board] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court concludes that, while minimal, Plaintiffs' allegations reasonably reflect that the Board's policies or customs permitted the First Amendment violations to occur and were the moving force behind those violations. Plaintiffs "raise a right to relief above the speculative level," and the claim is not subject to dismissal at this early pleading stage. *Twombly*, 550 U.S. at 555.

CONCLUSION

As outlined herein, the Motion to Dismiss (Doc. No. 8) is GRANTED IN PART and DENIED IN PART.

Plaintiff Theron's state-law *Burk* tort claim is hereby DISMISSED without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs' Oklahoma Anti-Discrimination Act retaliation claim is hereby DISMISSED without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The other claims of the Second Amended Complaint against Defendant Canadian County *ex rel.* Board of County Commissioners remain pending.

IT IS SO ORDERED this 26th day of September, 2024.

CHARLES B. GOODWIN
United States District Judge